IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **NATIONAL REIMBURSEMENT GROUP INC,** ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CIVIL ACTION NO. 5:13-CV-145(MTT) |
| **GEMINI INSURANCE COMPANY,** ) ) | |
| Defendant. ) ) | |

### ORDER

This is an action on an insurance policy. Plaintiff National Reimbursement Group, Inc. alleges that Gemini Insurance Company improperly failed to pay a claim covered by its professional liability insurance policy. Gemini has moved to dismiss, contending that the claim is not covered because it arose out of the embezzlement of funds by a NRG employee. For the reasons discussed below, the motion (Doc. 4) is **GRANTED.**

### I. FACTUAL BACKGROUND

National Reimbursement Group, Inc. ("NRG") provides medical billing and collection services. (Doc. 1-2 at ¶ 1). On June 11, 2011, Gemini issued a professional liability insurance policy to NRG providing $1,000,000.00 of coverage per claim and in aggregate coverage. (Doc. 1-2 at ¶ 4). NRG alleges that in August 2011 it was advised by a special agent with the United States Department of Health and Human Services that the agent was investigating a former NRG employee, Jackie Elvine, for allegedly diverting medical insurance checks, payable to patients of Mecklenburg Emergency Medical Services Agency ("MEDIC"), to her personal bank account. (Doc. 1-2 at ¶ 12).

At the time of Elvine's actions, NRG was under contract with MEDIC to provide it with billing and collection services.  (Doc. 1-2 at ¶ 13).

On September 6, 2011, NRG provided Gemini with notice of a potential claim resulting from the federal investigation of Elvine's conduct.  (Doc. 1-2 at ¶ 17).  On October 26, Gemini declined to provide coverage under the Policy.  (Doc. 1-2 at ¶ 19).

On March 26, 2012, MEDIC made a demand on NRG to repay losses incurred by MEDIC as a result of Elvine's embezzlement of insurance checks.  (Doc. 1-2 at 52-53).  On July 5, NRG sent Gemini its final demand for coverage but did not receive any further response from Gemini.  (Doc. 1-2 at ¶¶ 25-26).  Ultimately, NRG settled the claim with MEDIC for $134,247.00.  (Doc. 1-2 at ¶ 24).

## II.  DISCUSSION

### A.  Motion to Dismiss Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a

court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

### B. Interpretation of Insurance Contracts Under Georgia Law

The Parties agree that the Policy is governed by Georgia law. (Docs. 1-2 at 7-9; 4 at 5-6). "[I]n Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 111, 722 S.E.2d 923, 925 (2012) (citation omitted). When there is a conflict over coverage, a court must first determine whether, as a matter of law, the policy language at issue is ambiguous. *Id.* at 111, 722 S.E.2d at 925-26. "[A]mbiguity exists when the language may be fairly understood in more than one way; language is unambiguous if it is capable of only one reasonable interpretation." *Fulton Greens Ltd. P'ship v. City of Alpharetta*, 272 Ga. App. 459, 463, 612 S.E.2d 491, 494 (2005) (internal quotations and citation omitted). If the language of the contract is plain and unambiguous, then the court enforces the contract under its literal meaning and does not need to use the rules of contract construction. *Barkwell v. Sprint Commc'ns Co.*, 2010 WL 5069912, at *4 (M.D. Ga.). "In determining whether a contract is ambiguous, the courts generally interpret the contract by looking at the agreement as a whole, giving each word and phrase its plain, grammatical meaning." *Id.*

Further, "an insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others." *Video Warehouse, Inc. v. S. Trust. Ins. Co.*, 297 Ga. App. 788, 789, 678 S.E.2d 484, 486 (2009) (citations omitted). A plain and unambiguous exclusion "binds the parties to its terms and must be given effect, even if beneficial to the insurer

and detrimental to the insured." *Id.* The Court should "not strain to extend coverage where none was contracted or intended." *Id.*

### C. The Relevant Policy Language

Gemini issued the Policy to NRG as the named insured for the period June 11, 2011 to June 11, 2012. (Doc. 1-2 at 11). The Policy was issued on claims made and reported basis which meant that only claims first made and reported to Gemini during the policy period were covered. Under the Policy, Gemini is obligated to pay "any Loss and Claim Expenses … that the Insured shall become legally obligated to pay because of Claims first made against the Insured during the Policy Period, for Wrongful Acts of an Insured which occurred on or after the Retroactive Date[.]"[1] (Doc. 1-2 at 15). However, written notice of a claim must be provided to Gemini "during the Policy Period or within sixty (60) days thereafter." (Doc. 1-2 at 15). Further, the Policy requires "no Insured knew, nor could have reasonably foreseen, that the Wrongful Acts might result in a Claim" prior to the Policy's effective date. (Doc. 1-2 at 15).

The Policy defines an "Insured" to include NRG and any current or former "partner, director, officer or employee of [NRG] while rendering Professional Services on behalf of [NRG]." (Doc. 1-2 at 17). A "Wrongful Act" is "any negligent or unintentional breach of duty imposed by law, or Personal Injury, committed solely in the rendering of Professional Services by an Insured."[2] (Doc. 1-2 at 17). By endorsement, "Professional Services" are services rendered "[s]olely in the performance of providing a Billing Service, for others for a fee." (Doc. 1-2 at 25). Coverage is subject to various exclusions.

---

[1] The Policy's Retroactive Date is April 27, 2009. (Doc. 1-2 at 13).

[2] "Personal Injury" is limited to acts of libel, slander, and violations of the right of privacy or publicity. (Doc. 1-2 at 17). However, none of these torts are at issue in this case.

### D.   Wrongful Acts Under the Policy

"[B]efore addressing whether the terms of some exclusion might be applicable, the initial consideration is whether the policy covered [the claim]." *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 420, 454 S.E.2d 616, 618 (1995) (citations omitted).  The Parties disagree as to which acts form the basis of NRG's claim under the Policy.  NRG contends that its negligent supervision of Elvine's diversion of insurance checks constitutes the Wrongful Act allowing NRG to pursue a claim under the Policy.  Gemini argues that the Wrongful Act at issue is Elvine's diversion of checks and not NRG's negligent supervision.[3]  For the reasons discussed below, NRG's claim is excluded from coverage regardless of whether the claim is premised on Elvine's embezzlement or NRG's negligent supervision.

Clearly, NRG cannot pursue a claim for an employee's embezzlement under the terms of the Policy.  Elvine's acts of depositing checks payable to others in her personal bank account are not "negligent or unintentional breach[es] of duty imposed by law" nor do her actions constitute a Personal Injury under the Policy.  (Doc. 1-2 at 17).  The Parties do not dispute that Elvine's actions were intentional.  Therefore, Elvine's embezzlement falls outside of the scope of Wrongful Act as defined by the Policy, and her actions may not form the basis for a claim under the Policy.  *See, e.g.*, *Phila. Indem. Ins. Co. v. AGCO Corp.*, 2012 WL 1005030, at *5 (N.D. Ga.) (finding no duty to defend or indemnify existed under an insurance policy that only covered negligent acts, errors, and omissions when the claim was premised on intentional, rather than negligent, acts);

---

[3] Both Parties point to correspondence sent from MEDIC to NRG to support their respective definitions of "Wrongful Act."   MEDIC demanded "reimbursement for losses, costs, and expenses incurred in connection with the diversion and theft of insurance checks by" Elvine pursuant to NRG's obligation to indemnify MEDIC for the acts of NRG's employees.  (Doc. 1-2 at 52).  MEDIC further stated, "Elvine's actions have resulted in direct and indirect losses to [MEDIC]."  (Doc. 1-2 at 52).

*Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 373, 599 S.E.2d 220, 222 (2004) (holding that an insurance policy providing coverage for bodily injury or property damage resulting from accidents did not provide coverage for bodily injury caused by false imprisonment because false imprisonment is an intentional act).

Regarding whether NRG may pursue a claim for negligent supervision, Gemini asserts that negligent supervision does not fall within the definition of Wrongful Act because NRG's obligation to indemnify MEDIC arose under contract, and "NRG's performance of an indemnity obligation assumed in contract is not [a] breach of duty 'imposed by law.'" (Doc. 9 at 5). While NRG performed services for MEDIC pursuant to a contract, the existence of a contract does not preclude NRG from also breaching a duty imposed by law. Many claims covered by professional liability policies arise from professional/client contractual relationships. It is safe to assume that NRG has a contractual relationship with all its clients. Having sold NRG coverage for the billing services performed pursuant to those contracts, Gemini cannot argue it provides no coverage for Wrongful Acts in the performance of billing services simply because NRG and its client have signed a contract.[4]

Moreover, apart from any contractual duty, employers have a duty to exercise reasonable care in the supervision of employees. *See, e.g.*, *Novare Grp., Inc. v. Sarif*, 290 Ga. 186, 190-91, 718 S.E.2d 304, 309 (2011) (internal citation and quotations omitted) (stating that a claim for negligent supervision against an employer exists when sufficient evidence "establish[es] that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the

---

[4] It is important to note that the indemnity obligation Gemini refers to arises from a contract that established the professional/client relationship between NRG and MEDIC. NRG did not agree subsequent to the breach of any duty to MEDIC to indemnify it for losses. There may not be coverage for such a post-injury contractual assumption of liability.

injuries allegedly incurred by the plaintiff"). Thus, negligent supervision can fall within the definition of Wrongful Act. Accordingly, the Court must consider whether NRG is barred from pursuing its claim for negligent supervision due to any exclusions found in the Policy.

### E. Exclusions Under the Policy

Gemini contends that three exclusions apply to preclude coverage.[5] Exclusion A precludes claims "Arising Out Of any actual or alleged … [c]riminal, fraudulent, dishonest, or knowingly wrongful act or omission committed by or with the knowledge of any Insured." (Doc. 1-2 at 18). Exclusion B precludes claims "Arising Out Of any actual or alleged … gaining by any Insured of any personal profit, gain or advantage to which any Insured was not legally entitled." (Doc. 1-2 at 18). Finally, an endorsement identified as the Commingling and Certified Public Accountant Exclusion precludes claims "Arising Out Of any commingling of or inability or failure to safeguard funds." (Doc. 1-2 at 30).

Georgia courts have considered the effect of the phrase "arising out of" in exclusionary clauses found in professional and general liability insurance policies. In *Continental Casualty Co. v. H.S.I. Financial Services, Inc.*, the law firm's client initially sued the firm for conversion based on a partner's improper withdrawal and personal use of funds from the client's escrow account, and the firm sought coverage under its professional liability insurance policy. 266 Ga. 260, 261, 466 S.E.2d 4, 5-6 (1996). The client then amended the complaint to drop the conversion charge and add claims for

---

[5] In addition to the Policy's exclusions, Gemini points to several other limitations under the Policy that bar NRG's claim. Gemini argues that NRG's claim is not covered because the Wrongful Acts occurred prior to the Retroactive Date. Gemini also argues that the claim is barred because an Insured knew or could have reasonably foreseen that the Wrongful Acts might result in a claim. Because the claim is clearly barred by an exclusion, as discussed below, the Court need not address these other arguments.

negligence and legal malpractice based on the theory that the firm's two other partners "failed to supervise and ensure the proper accounting of [the] escrowed funds." *Id*. Equating "arose out of" with but-for causation, the Georgia Supreme Court held that the plain language of the policy's exclusion for claims "'arising out of any dishonest, fraudulent, criminal, or malicious act'" precluded coverage for the negligent supervision and malpractice claims because those claims would not have existed but for the acts of conversion. *Id*. at 262, 466 S.E.2d at 6. The court stated that the exclusionary clause was "focused solely upon the genesis of [the client's] claims" and not "whether ancillary acts of less culpable partners may have contributed to the loss [the client] suffered as a result of [the conversion]." *Id*.

Other courts have reached the same result when analyzing similar exclusionary clauses under Georgia law. In *Video Warehouse, Inc.*, the business liability policy at issue excluded coverage for bodily injury "arising out of" the use of any vehicle owned or operated by an employee acting within the scope of employment or performing duties related to the conduct of the business. 297 Ga. App. at 790, 678 S.E.2d at 487. The court held that the exclusion also precluded claims for negligent hiring and retention in addition to claims for bodily injury because the "'arising out of' language [excludes] *all* claims for injuries caused by the excluded acts, *regardless* of the theory of tort liability." *Id*. at 791, 678 S.E.2d at 488. Similarly, the court in *Pilz* held that a policy covering claims for "bodily injury" but excluding coverage for those claims "arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such act" barred the assault and battery claims and "the negligence claims that would not have arisen but for the alleged assault and battery." 267 Ga. App. at 371-73, 599 S.E.2d at 221-22 (internal quotations omitted).

Here, the Policy defines "Arising Out Of" as "connected to, incidental to, originating from or growing out of, directly or indirectly resulting from." (Doc. 1-2 at 16). In light of this definition and the cases discussed above, NRG's claim for negligent supervision would not exist but for, and therefore arises out of, Elvine's embezzlement. Thus, the Policy's exclusion for any "actual or alleged … [c]riminal, fraudulent, dishonest, or knowingly wrongful act or omission committed by or with the knowledge of any Insured" clearly precludes coverage for NRG's claim of negligent supervision. Accordingly, the Court need not address whether coverage is precluded by the remaining two exclusions.

NRG's sole argument that this exclusion is inapplicable rests on the Policy's definition of Insured. "Insured" is defined to include NRG and any current or former "partner, director, officer or employee of [NRG] while rendering Professional Services on behalf of [NRG]." (Doc. 1-2 at 17). "'Professional Services' means only those professional services listed on the Declarations Page as performed by or on behalf of [NRG] for others for a fee or other form of compensation." (Doc. 1-2 at 17). The declarations page states, "[NRG's] Professional Services[] shall read as follows: [s]olely in the performance of providing a Billing Service, for others for a fee." (Doc. 1-2 at 25). NRG contends that Elvine was not an Insured pursuant to these definitions because her diversion of MEDIC's funds meant "she was operating outside the scope of her employment, thereby precluding her from occupying employee status." (Doc. 7 at 10).

NRG's argument, although creative, is without merit. Clearly, Elvine was an employee engaged in billing services, and thus was an Insured. That she embezzled funds while engaged in billing services does not change her status as an Insured. The plain intent of the exclusion is to exclude coverage for such embezzlement by

employees.  While it may be true that her criminal acts were not within the scope of her employment, the fact remains that she embezzled funds while engaging in billing services for NRG.

Further, NRG's interpretation of these definitions would render the exclusion meaningless.  In effect, NRG argues that although criminal acts of employees are not covered, an employee committing a crime is not, under the Policy, an employee.  If committing any "[c]riminal, fraudulent, dishonest or knowingly wrongful act or omission" by an Insured would nullify that person's status as an Insured, then the exclusion would never apply to preclude claims arising out of an employee's criminal acts.  The Court "should avoid an interpretation of a contract which renders any of its terms meaningless or mere surplusage."  *Garrett v. S. Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 183, 739 S.E.2d 661, 667-68 (2013).  Construing these definitions together, the Court finds that these definitions are capable of only one reasonable interpretation and are therefore unambiguous.  Accordingly, NRG is precluded by an exclusion from pursuing a claim for negligent supervision under this Policy.[6]

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **GRANTED**.

**SO ORDERED**, this the 21st day of August, 2013.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT

---

[6] NRG also brought a claim against Gemini for acting in bad faith when it refused to pay NRG's claim under the Policy.  "Under Georgia law, [however,] there can be no recovery for bad faith when there is no coverage."  *OneBeacon Am. Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665, 673 (11th Cir. 2012) (citation omitted).